UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TRAVIS CRANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 22-cv-1153 |
| ) | |
| TONY CHILDRESS, et al., ) | |
| ) | |
| Defendants. ) | |

## MERIT REVIEW ORDER

Plaintiff proceeds pro se from his incarceration in Jacksonville Correctional Center on claims accruing when Plaintiff was detained at the Livingston County Jail.

Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 8) is granted.

The case is now before the Court for a merit review of Plaintiff's Amended Complaint. The Court must "screen" Plaintiff's complaint, and through that process identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff seeks to sue Livingston County Illinois, Sheriff Tony Childress, former Jail Superintendent Stewart Inman, Correctional Officer Peters, former Sergeant and present Jail Superintendent Lisa Draper, Sergeant Justin Long, Correctional Officer Kevin McKinsey, Illinois State Police Officer Doe, Correctional Officer Sara Clay, and Registered Nurse Jennifer Dawn.

Plaintiff was a pretrial detainee at the Livingston County Jail during the events underlying this suit.

1. Overdose Incident

On May 1, 2021, Defendant Illinois State Police Officer(s) arrested a person. The arresting officers failed to properly search that person. Arresting officers brought the person to the Livingston County Jail to be detained.

An unnamed Correctional Officer failed to adequately search this person prior to admitting them to the jail. This arrestee was placed in booking cell two.

On May 1 or 2, Correctional Officer Clay asked the arrestee for a urine sample. Jail policy is to obtain such a sample. The arrestee declined, and Clay moved on and did not pursue obtaining the test. On May 2, the arrestee was moved out of cell two to another cell.

Defendant Correctional Officer McKinsey was assigned to booking on May 2. After the arrestee was moved out of cell two, McKinsey failed to inspect the cell before

the cell was cleaned. McKinsey requested trustees[1] Jenkins, Jr. and Fellers to clean cell two. Jenkins, Jr. and Fellers found an empty vile and a bag containing a substance. They took the bag to the bathroom. On the recommendation of another inmate, Plaintiff went to the bathroom to investigate, grabbed the bag, and got some of the substance contained in the bag on his hand. Later testing revealed the substance to be a mixture of carfentanil and heroin.[2]

Plaintiff became heavily sedated and lost consciousness. He alleges that he "died."

Plaintiff's allegations related to his exposure to the contraband substance left in cell two fail to state a claim.

Plaintiff's allegations do not state a claim for failure to protect Plaintiff from harm. To state a viable failure-to-protect claim under the Fourteenth Amendment, a pretrial detainee must allege (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement, (2) those conditions put the plaintiff at substantial risk of suffering serious harm, (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious, and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 496–

---

[1] Plaintiff refers to various individuals throughout his Complaint as "trustees." Plaintiff appears to use this term to refer to detainees or inmates who have certain roles or jobs within the jail.
[2] Carfentanil is a synthetic opioid 100 times more potent than fentanyl.

97 (7th Cir. 2022); *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). "The defendant officer must intend to carry out a certain course of actions; negligence is not enough." *Kemp*, 27 F.4th at 497.

Plaintiff's allegations describe at best a course of negligent conduct by the Illinois State Police Defendants, Clay, and McKinsey. There is no indication these Defendants took a conscious course of action in failing to discover the contraband brought into the Jail by an arrestee. There is no indication these Defendants knew of the existence of the substance in the Jail prior to Plaintiff's exposure to it. Furthermore, Plaintiff's and other detainees' voluntary decisions to expose themselves to the contraband, rather than notifying security staff, disrupts the chain of causation necessary under the fourth element.

Plaintiff's allegations also do not state a municipal liability claim against the County. Plaintiff's allegations relate to his exposure to a substance brought into the Jail by an arrestee. A plaintiff "must do more than simply rely upon his own experience to invoke *Monell* liability." *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017).

2. Emergency Response and Medical Treatment

Correctional Officer Clay was performing detainee checks, noticed Plaintiff's sedated condition, and called for help. Sergeant Long, Nurse Dawn, and Correctional Officer Ambros responded. Plaintiff describes a chaotic emergency response with "trustees" involving themselves in performing CPR on Plaintiff and "bypassing security" to admit first responders to the Jail. Plaintiff describes confusion over locating

and administering Narcan to Plaintiff. Plaintiff alleges medical staff were not properly trained to diagnose overdose victims and meaningfully respond to the emergency.

Plaintiff was transported to Pontiac St. James Hospital Emergency Room. He was later transported to a hospital in Champaign, Illinois. Plaintiff was told that Livingston County never takes detainees to Champaign hospitals, but rather to Bloomington or Peoria hospitals. Plaintiff's discharge papers indicated he was the victim of an accidental overdose. Plaintiff alleges he was ordered to have a checkup and blood draw one week after discharge, but he did not receive those services until approximately two weeks after discharge.

Plaintiff alleges he was prescribed antidepressants by Nurse Dawn for PTSD without seeing or talking to a psychiatrist or mental health counselor.

Plaintiff has failed to state a claim regarding the emergency response to his overdose.

Medical care claims brought by pretrial detainees under the Fourteenth Amendment are subject to an objective unreasonableness standard. *See Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)). Under *Miranda*, a court must conduct two separate inquiries. The first inquiry asks whether the "defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [an inmate's] case." *Miranda v. County of Lake*, 900 F.3d 335, 353 (7th Cir. 2018). "[I]t will not be enough [for a plaintiff] to show negligence or gross negligence." *Id.* 353. The second inquiry asks whether the defendants' acts were objectively unreasonable. *Id. at* 354. The

latter inquiry is case-specific and must be made from the perspective of a reasonable official present at the time the relevant decisions were made, including what the official "knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Plaintiff describes a chaotic emergency response to his unexpected overdose which was caused by him voluntarily exposing himself to a powerful synthetic opioid that was brought into the jail by an arrestee and snuck into a bathroom by other detainees. His allegations describe, *perhaps*, a negligent response. Plaintiff does not allege, however, that any Defendant consciously undertook an objectively unreasonable course of action. Plaintiff must allege something more than negligence to state a claim, and he has failed to do so.

Regarding his post-release medical checkup, Plaintiff alleges a delay of two weeks in receiving bloodwork and a checkup. He does not allege this brief delay caused him any harm. This allegation fails to state a claim.

Finally, Plaintiff alleges he was prescribed certain medication without first seeing a mental health counselor or psychiatrist. There is no indication the nurse who prescribed the medication was not licensed to do so, nor does Plaintiff allege any harm because of the prescriptions. These allegations too fail to state a claim.

3. Search and Segregation Upon Readmission to Jail

Plaintiff was strip searched upon his readmission to the Livingston County Jail.

Plaintiff was held in segregation and restricted housing for approximately three weeks and questioned repeatedly regarding contraband being brought into the Jail.

Plaintiff alleges there was no disciplinary report or process for him being held in segregation.

Courts must "balance the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Bell v. Wolfish*, 441 U.S. 520, 560 (1979) (holding that facility's rules requiring detainees "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution" were not unreasonable because they "were necessary not only to discover but also to deter the smuggling of weapons, drugs, and other contraband into the institution").

Plaintiff was involved in an overdose incident from contraband opioids brought into the prison by an arrestee. Plaintiff voluntarily exposed himself to the contraband. And while Plaintiff maintains, and the Court accepts as true, that his exposure was entirely accidental, Jail officials were entirely justified in disbelieving his assertions to that effect. He was strip searched upon readmission and subject to segregated housing while Defendants sought to obtain whatever information they could from him regarding the circumstances of the contraband incident.

Plaintiff's allegations fail to state a constitutional claim. The steps Plaintiff describes upon his readmission to the Jail amount to reasonable security measures taken by Jail staff in response to an extraordinary contraband incident in which Plaintiff was directly involved.

4. Grievances and Housing Transfers

Beginning on June 9, 2021, Plaintiff began filing grievances related to the above incidents. On June 14, 2021, Plaintiff was relocated to a different, higher security, housing unit. He had received no disciplinary tickets and believes he was transferred in retaliation for the grievances he filed a few days before.

From June 14 through 23, Plaintiff filed multiple grievances. He alleges security staff ignored his requests for copies of the grievances for a few days until a Lieutenant became involved.  On June 23, 2021, Plaintiff was called out of his housing unit by Correctional Officer Durre. Correctional Officer Peters was also present, as was Superintendent Inman. Inman shouted and pointed his finger in Plaintiff's face and yelled at him about his grievances and ability to sue. Plaintiff alleges Inman told him he could counter-sue and "go to the prosecutor" and said Plaintiff should "take three or four years and get out of here." Peters did not intervene "to calm the scene down." Between this occurrence and Plaintiff's transfer to IDOC custody, Plaintiff's cell assignment was changed nine more times.

In September 2021, Inman retired, and Draper became the new Superintendent. Plaintiff alleges Draper continued a "custom" of relocating Plaintiff to multiple housing units until Plaintiff left the Jail in January 2022.

Plaintiff's allegations do not state a claim.

 To make out a prima facie case of First Amendment retaliation, a plaintiff must establish that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future,

and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

"[T]he filing of a prison grievance is a constitutionally protected activity supporting a First Amendment retaliation claim …." *Daugherty v. Harrington*, 906 F.3d 606, 610 (7th Cir. 2018) (internal citation omitted). However, Plaintiff has not alleged that he suffered any deprivation likely to deter future First Amendment activity. Simply being transferred from housing unit to housing unit is not a sufficiently serious deprivation. *See West v. Kingsland*, 679 F. App'x 482, 486 (7th Cir. 2017). Likewise, "'[S]imple verbal harassment' of a prisoner does not suffice [to deter a person of ordinary firmness], and . . . even threats may not suffice." *Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016).

Inman was apparently frustrated by the barrage of grievances Plaintiff filed, and the Court does not doubt Plaintiff's sincerity in filing them following the traumatic event he experienced. But the Court finds Plaintiff's allegations are insufficient to state a claim that rises to the level of a constitutional violation.

5. Garnishment for Medical Costs

Plaintiff alleges that in November 2021 the new Superintendent Draper, garnished Plaintiff's trust fund account to reimburse x-rays taken of Plaintiff in June or July 2021.

While the Constitution requires objectively reasonable medical care for detainees, and officials cannot deny medical care because a detainee has the inability to pay for

services up-front, the Constitution does not require *free* medical care. *See Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012). Plaintiff's allegations that he was required to repay the County for the costs of his x-rays do not state a claim.

**IT IS THEREFORE ORDERED:**

1. **Plaintiff's Motion to File an Amended Complaint [8] is GRANTED. The Clerk is to docket the first attachment to [8] as Plaintiff's Amended Complaint.**

2. **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds Plaintiff's allegations fail to state a claim. Plaintiff's Amended Complaint is DISMISSED.**

3. **Plaintiff is granted 21 days to file a Second Amended Complaint, if he believes he can state a claim consistent with the rulings and caselaw cited in this Order. Failure to file a Second Amended Complaint within 21 days will subject this case to dismissal without prejudice for failure to state a claim.**

Entered this 8th day of May, 2023.

*s/Colleen R. Lawless*
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE